Aaron KEMP, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 41A04–0710–CR–587.

Court of Appeals of Indiana.

May 27, 2008.

Peter D. Nugent, Thomas, Szostak, Thomas & Nugent, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ann L. Goodwin, Special Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Aaron Kemp appeals the sentence imposed by the trial court after Kemp pleaded guilty to four counts of Forgery,[1] a class C felony, four counts of Theft,[2] a class D felony, and one count of Corrupt Business Influence,[3] a class C felony. Kemp argues that the aggregate thirty-two year sentence and the executed twenty-year sentence are inappropriate in light of the nature of the offenses and his character. Finding the

sentence to be inappropriate, we reverse and remand with instructions.

### FACTS

Kemp was the administrator for Greenwood United Methodist Church (the Church) from January 2002 through June 2005. Kemp kept the Church's books and controlled the Church's bank accounts. While Kemp was employed by the Church, he wrote unauthorized checks to himself and others from the Church's accounts. Kemp knew that he was defrauding the Church by writing and cashing those checks. Kemp also used the Church's credit card on over 300 occasions to purchase electronics, items for his pets, cable television, restaurant meals, and flowers. He knew that he was not permitted to use the Church's credit card for those purposes but continued to do so anyway. By June 2005, Kemp had stolen approximately $350,000 from the Church.

On June 8, 2005, Kemp arrived at work and found the Church pastor and some members waiting to confront him about their suspicion that he had been stealing from the Church. He immediately admitted what he had done. Police officers were called and he made a full confession, cooperating with the Church's civil attorneys and the police during the course of the investigation. The Church eventually secured a $ 1,000,000 civil judgment against Kemp.

On May 1, 2006, the State charged Kemp with four counts of class C felony forgery, four counts of class D felony theft, and one count of class C felony corrupt business influence. On August 27, 2007, Kemp pleaded guilty as charged. The plea agreement provided that the State would make no sentencing recommenda-

1. Ind.Code § 35–43–5–2(1).

2. I.C. § 35–43–4–2(a).

3. Ind.Code § 35–45–6–2(a)(2).

tion and set a cap of thirty years on the executed portion of the sentence.

At the August 27, 2007, sentencing hearing, the trial court found the nature and circumstances of the crimes to be an aggravator. Specifically, the trial court noted the large amount of money that had been stolen, the care and planning that went into the crimes and their concealment, and the fact that a great number of checks were stolen and unauthorized credit card charges made without any cessation. The trial court also observed that Kemp had breached the trust of the Church and its pastor. Additionally, the trial court commented that although the parties had agreed on a restitution amount, there was evidence of additional financial harm including tax liens, interest, and penalties resulting from the thefts. The court found the fact that Kemp was remorseful to be a mitigator, though it faulted him for not selling some items or his home to attempt to repay some of the restitution. The trial court also found the fact that Kemp had admitted his offenses and cooperated from the outset to be a mitigator. Finally, the trial court placed substantial mitigating weight on the absence of any juvenile or criminal history.[4]

Ultimately, the trial court concluded that the aggravators outweighed the mitigators and sentenced Kemp to six years for each of the four class C felony forgery counts, two years for each of the four class D felony theft counts, and four years for the class C felony corrupt business influence, all to be served consecutively except for the corrupt business influence sentence, for a total sentence of thirty-two years. The trial court then suspended six years to probation, for a total executed sentence of twenty-six years, six years of which it ordered to be served on work release and twenty years of which it ordered to be served in the Department of Correction. Kemp now appeals.

### DISCUSSION AND DECISION

Kemp argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character pursuant to Indiana Appellate Rule 7(B). In reviewing a Rule 7(B) appropriateness challenge, we defer to the trial court. *Stewart v. State*, 866 N.E.2d 858, 866 (Ind.Ct.App.2007). When determining whether a sentence is inappropriate, we recognize that the presumptive[5] sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Weiss v. State*, 848 N.E.2d 1070, 1072 (Ind.2006). We must examine both the nature of the offense and the defendant's character. *Payton v. State*, 818 N.E.2d 493, 498 (Ind. Ct.App.2004). When conducting this in-

---

4. At the sentencing hearing, the State offered evidence—which was admitted over Kemp's objection—that in 1999, Kemp was employed by Bethany Lutheran Church (BLC) and used a church credit card to purchase luxury items for himself. Kemp eventually admitted that he had stolen the money and the BLC decided not to initiate criminal charges, believing that Kemp had learned his lesson. Kemp disputes the relevance and accuracy of this evidence. Inasmuch as the trial court did not rely on the 1999 incident in imposing Kemp's sentence, however, we need not consider the propriety of the evidence and will not factor it into our decision herein.

5. Indiana's sentencing statutes were amended in April 2005 and among the changes made was the replacement of "presumptive" sentences with "advisory" sentences. Ind.Code § 35–50–2–1 *et seq.* Inasmuch as Kemp's offenses were committed prior to the effective date of the amendments, however, we will refer to presumptive rather than advisory sentences herein. *See Gutermuth v. State*, 868 N.E.2d 427, 431 n. 4 (Ind.2007) (affirming "the long-standing rule that the sentencing statute in effect at the time a crime is committed governs the sentence for that crime").

quiry, we may look to any factors appearing in the record. *Roney v. State*, 872 N.E.2d 192, 206 (Ind.Ct.App.2007), *trans. denied.* The burden is on the defendant to demonstrate that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006).

The presumptive sentence for a class C felony is four years, with a minimum sentence of two years and a maximum sentence of eight years. I.C. § 35–50–2–6(a). Kemp received six years for each of the class C felony forgery convictions, with one year of each sentence suspended to probation, and four years for the class C felony corrupt business influence conviction. The presumptive sentence for a class D felony is one and one-half years, with a minimum sentence of six months and a maximum sentence of three years. I.C. § 35–50–2–7(a). Kemp received two years for each of the four class D felony theft convictions, with six months of each sentence suspended to probation.

Turning first to the nature of Kemp's offenses, he breached a position of trust with the Church by stealing approximately $350,000 over the course of four years. He repeatedly, and without cessation, wrote unauthorized checks to himself and others and used the Church credit card for personal purposes. He was financially solvent without stealing from the Church, he could have earned extra money in other ways, and he used the money that he stole to purchase, among other things, luxury items such as electronics and flowers.

To conceal his offenses, Kemp destroyed checks and credit card statements, falsified financial records and reports to Church officials, liquidated Church assets, and shifted money away from legitimate business expenditures, such as the Church health insurance and pension plans covering its other employees. Among other things, Kemp's failure to pay Church employee health insurance premiums resulted in the lapse of Church employee Melissa Hall's health insurance while she was pregnant. When Hall discovered that she had no health insurance and went to Kemp, he assured her that it was just a glitch that she should not mention to anyone. Kemp failed to rectify the problem, resulting in the Church paying a large portion of Hall's medical bills and Hall's credit rating being ruined. While depriving Hall of her health insurance, Kemp used Church funds to pay the premiums for unauthorized health, dental, and life insurance policies for himself and his family.

Kemp's crimes had several deleterious effects on the Church. First, part of the money that Kemp stole came out of special needs collections for tsunami, earthquake, and hurricane victims, hampering the Church's social justice mission. Furthermore, although the actual amount stolen by Kemp totaled approximately $350,000, the total financial loss to the Church, including interest, delinquency fees, and finance charges, totaled approximately $655,000. Additionally, because Kemp had failed to pay the Church's state and federal tax bills, twelve tax liens were filed against the Church's property. Furthermore, the congregation has experienced great turmoil, with the personal reputation of the pastor and that of the congregation itself called into question. The Church has been forced to curtail its work and faces uncertainty about its future.

As for Kemp's character, the trial court placed substantial mitigating weight on the complete absence of a juvenile or criminal history. Additionally, he expressed remorse for his actions and cooperated fully with the investigation, eventually pleading guilty as charged. He did not, however, attempt to make restitution to the Church

prior to sentencing. We also observe that Kemp has two dependent children.

Kemp argues that a more appropriate sentence would be three consecutive presumptive terms of four years each, with the remaining presumptive sentences to be served concurrently, for a total sentence of twelve years. He further contends that six of those years should be suspended to probation, two years executed in the DOC, and four years served on work release. In the alternative, he argues that even if we do not find the thirty-two year sentence imposed by the trial court to be inappropriate, his placement in the DOC for twenty years is inappropriate. In that case he asks for a significant reduction of the term of placement with the DOC.

The nature of Kemp's offenses is undeniably despicable. He abused a position of trust with the Church, ruined the credit rating of a fellow Church employee, and caused potentially irreversible damage to the congregation and its pastor. He stole repeatedly and without cessation and went to great lengths to conceal his unauthorized activities. We must also consider Kemp's character, however, and we place great weight on the complete absence of a prior criminal history. Similarly, it is significant that Kemp immediately admitted to his crimes and pleaded guilty as charged. Ultimately, we find the nature of the offenses and Kemp's character to be in equipoise and conclude that the sentences imposed by the trial court were inappropriate.

In light of the nature of the offenses and Kemp's character, we direct the trial court to amend the abstract of judgment to reflect the following sentences: (1) four years each for the four class C felony forgery convictions, to be served consecutively; (2) one and one-half years each for the four class D felony theft convictions, to be served concurrently with the forgery sentences; and (3) three years for the class C felony corrupt business influence conviction, to be served concurrently with the forgery sentences. Thus, Kemp faces an aggregate sentence of sixteen years. We remand to the trial court with instructions to decide how Kemp should serve those sixteen years, keeping the goal of monetary restitution to the Church in mind.

The judgment of the trial court is reversed and remanded with instructions set forth above.

RILEY, J., and ROBB, J., concur.