Anthony D. LASTER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–1103–CR–91.

Court of Appeals of Indiana.

Oct. 26, 2011.

Randy M. Fisher, Deputy Public Defender, Leonard, Hammond, Thoma & Terrill, Fort Wayne, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Anthony D. Laster and an unidentified accomplice robbed four people in their apartment. Laster was linked to the crimes when it was discovered that he had possession of one of the cell phones taken during the robbery. Although three of the victims identified Laster as one of the robbers, Laster claimed that his stepfather had purchased the phone for him and that he was not involved in the robbery. The morning of his jury trial for robbery and burglary, Laster moved for a continuance, asserting that a witness had recently come forward who implicated two other men in the robbery. The trial court denied the motion and proceeded with the trial. Laster was found guilty of burglary and four counts of robbery, all class B felonies. The trial court imposed an aggregate sentence of forty years, all executed.

On appeal, Laster argues that the trial court abused its discretion by denying his motion for continuance. All that was known about the new potential witness was her first name. Because there was no apparent likelihood of locating the witness, we conclude that the trial court did not abuse its discretion by denying Laster's motion for continuance.

Laster also argues that the trial court abused its discretion in sentencing him and that his sentence is inappropriate. While we agree with the trial court that the existence of separate victims justifies consecutive sentences, we conclude that the nature of the offenses and the character of the offender do not warrant a fully executed sentence on each count. Therefore, we remand for the trial court to revise each sentence to eight years executed and two years suspended, for a total of thirty-two years executed and eight years suspended.

### Facts and Procedural History

On the evening of July 29, 2010, Oscar Narvaez, Martin Narvaez, Amy Simons, James Neighbor, and Donovan Dowling went to a bar in Fort Wayne. Oscar,

Neighbor, and Dowling were roommates and students at IPFW. Oscar, his brother Martin, and his girlfriend Simons are all from Australia, and Neighbor is from the United Kingdom. Dowling offered to be the designated driver. There was not enough room for everyone in his car, so he first took Martin and Neighbor back to Neighbor's apartment.

When Martin and Neighbor entered their apartment building, a man was standing in the hallway. It seemed that he was about to knock on one of the doors, and Martin told him that no one was there. As Martin turned to unlock his brother's door, he felt a gun pressed against his back. Martin and Neighbor were told to go in and lie on the floor. Two men entered behind them, and one of them pushed Martin to the floor. The men placed pillows over Martin's and Neighbor's heads and demanded to know where their money was. Martin and Oscar had recently cashed their checks from their summer jobs, and Martin initially denied knowing where the money was. One of the robbers hit him in the head with a pistol, and Martin then told them where the money was.

Meanwhile, Oscar and Simons got a ride home with someone else, and Dowling went to meet some other friends. Oscar and Simons arrived home while the robbery was still in progress. The robbers ordered Oscar and Simons to lie on the floor, and they complied. At some point, Oscar tried to get up, and he was pushed back onto the floor and kicked in the head. One of the robbers held two guns on the victims while the other collected items of value, including cell phones, suitcases, wallets, laptops, a camera, a PlayStation, an Xbox, DJ turntables, and Simons's purse, which contained passports and cash. As the robbers left, one of them said, "[Don't] f—ing move, don't move or I'll blow you." Tr. at 149.

Afraid that the robbers would return, Oscar, Martin, Simons, and Neighbor remained on the floor for about ten minutes. Then Oscar got up and tried to find a phone so that he could call the police. Simons and Martin were especially shaken up and would not get up off the floor.

When Dowling arrived home, he knocked on the door because it was bolted shut and he could not get in. The people inside were still frightened and made Dowling answer questions to prove who he was before they would let him in. Oscar then used Dowling's cell phone to call the police.

The phone that had been stolen from Oscar was a Blackberry. About five days after the robbery, Oscar's friend Christopher Moreno forgot that Oscar's phone had been stolen and tried to contact him. Moreno noticed that Oscar's profile picture had been replaced by a photo of an unknown man.[1] A few days later, Oscar's name had been replaced with the name "Anthony." Oscar and Martin identified the man in the photo as one of the robbers.

---

1. At trial, Oscar explained how the Blackberry profile works:

> When you own a Blackberry, each Blackberry is set with a pin and you can talk to anyone all over the world who has a Blackberry. You give them your pin, they give you yours, and you're on a constant network with them so you can talk to them, chat with them, send them photos, files, pictures, whatever.

> . . . .

> Well, each person has a profile. So you have your name, your photo, you can update your status. . . . [S]o when you click on them it will have the photo, the name, and then the place where you can enter your message.

Tr. at 123–24. Thus, if someone wanted to contact Oscar, they would see his picture and his name.

Detective Jason Snyder was able to identify the man in the photo as Anthony Laster. Detective Snyder prepared a photographic array and showed it separately to Neighbor, Simons, and Oscar. Simons and Oscar picked Laster's picture out of the array. Neighbor was not able to identify anyone because the pillow over his head had prevented him from getting a good look at the robbers. Martin, who attends school in New York, had already left town and was not shown the photographic lineup.

Detective Snyder interviewed Laster. Laster said that his stepfather, Darnell Walker, had given him the Blackberry. He claimed that Walker had purchased it at a gas station from someone named "Cam." Detective Snyder showed Laster the photo that had replaced Oscar's on his Blackberry profile, and Laster agreed that it was a photo of himself.

Laster was charged with four counts of class B felony robbery and one count of class B felony burglary. The other robber has apparently remained unidentified. The jury trial commenced on Tuesday, January 11, 2011. That morning, Laster requested a continuance because two potential witnesses had come forward. Defense counsel stated that on the Friday before trial, he received a call from someone named "Molly" who would not give her last name. Molly claimed that the robbery had been committed by LaCameron Smith and Franklin Wright. She claimed to have been present when they planned the robbery and when they divided up the stolen goods afterwards. Defense counsel provided this information to the prosecutor and also gave Molly the prosecutor's phone number.

The other potential witness was Avery Wilkens. Wilkens approached defense counsel in court on the Monday before trial. Wilkens claimed to have been pres-ent when Walker purchased the Blackberry from Smith. Smith was expected to testify that he had not sold a phone to Walker.

The prosecutor objected to the continuance, arguing that Wilkens and Molly were not credible witnesses and that the State had paid to fly in a witness from Philadelphia. The court denied Laster's motion, concluding that it was "untimely and unsupported." Appellant's App. at 5.

At trial, Oscar, Martin, and Dowling testified about the events of July 29, 2010. Oscar and Martin both testified with certainty that they recognized the picture from Oscar's phone as one of the robbers, and they each identified Laster in court as one of the robbers; in fact, Martin testified that he was "completely adamant" that Laster was the man he had seen in the hallway. Tr. at 152. Simons and Neighbor were no longer in the country and did not wish to return for the trial. Moreno testified about seeing Laster's photograph and the name "Anthony" when he tried to contact Oscar.

Laster testified in his own defense. He stated that he had been living with his brother, Antonio Laster; his uncle, Richard Austin; Austin's girlfriend; and Austin's daughter. The evening of July 28, 2010, he was home with Antonio, Austin, Austin's girlfriend, Austin's daughter, and a friend, Javon Turner. The men played a video game until late in the evening, and then went to bed. The next day was Austin's daughter's birthday. Laster and Antonio helped Austin and his girlfriend prepare for their daughter's birthday party. Later that day, a three-day family reunion commenced. Austin, Antonio, and Turner also testified and corroborated Laster's account of his activities.

Laster testified that he had gotten the Blackberry from Walker. He knew that

Walker did not pay much for the phone, but he did not think that was unusual because the phone was scratched. Walker testified that he bought the phone from Smith at a gas station. Walker paid $15–20 for the Blackberry, which was scratched.

In rebuttal, the State called Smith. Smith testified that he is friends with Laster and knows Walker. He claimed that he did not sell Walker a cell phone.

The jury found Laster guilty as charged. At sentencing, Laster's grandmother and a friend testified to Laster's positive character traits, and his mother also submitted a letter to the court. Laster was twenty years old when he committed the offenses, and he had a previous adjudication for disorderly conduct, a conviction of possessing alcohol as a minor, and a conviction of entering a tavern as a minor. He asked the court to recognize the following mitigating circumstances: that he is relatively young; that he would benefit from a short period of incarceration or probation; that he was employed; that he was enrolled in college; and that he has a good support system.

The court imposed a sentence of ten years on each conviction, with the robbery sentences consecutive to each other and the burglary sentence concurrent. The court explained its sentence as follows:

> You're twenty (20) years of age, clearly old enough to know better and I refuse to find that as a mitigating circumstance. Your attorney has further argued that you would benefit from a short period of incarceration as your criminal history shows successful completion of probation. I decline to find that as a mitigating circumstance. I do accept as mitigating circumstances the fact that you were employed and attending school at the time. I don't weight [sic] those very heavily though Mr. Last-er.... [Y]ou should be employed and the fact that you are attending school is a ... good thing and I'm glad that you were doing that.... I do find as [an] aggravating circumstance your minor juvenile and adult record.... The nature and circumstances of the crimes with multiple victims as argued by the State is an aggravating circumstance. I consider the fact that the multiple victims ... justifies consecutive sentencing versus concurrent sentencing and I would agree with the State to the extent that this was totally senseless. These people would have given you anything that you wanted Mr. Laster.... I agree with the State that the kicking was a bit much and over the top.... You had no need to take passports from these folks.... The Court would find as a further mitigator the fact that you do have strong support as evidenced by the folks that are here but for some reason Mr. Laster you chose not to avail yourself of that strong support. The Court would find that the aggravating circumstance of your minor juvenile and adult criminal record is balanced by the mitigating circumstances. However, the multiple victims as I've said does justify consecutive sentencing.

Sentencing Tr. at 16–18. The court also ordered Laster to pay $5500 in restitution. Laster now appeals.

### Discussion and Decision

Laster argues that the trial court abused its discretion by denying his motion for a continuance. He also argues that the trial court abused its discretion in identifying mitigating and aggravating circumstances and that his sentence is inappropriate in light of his character and the nature of the offenses.

### I. Continuance

Before trial, Laster requested a continuance so that he could further investigate Molly and Wilkens as potential witnesses. On appeal, Laster does not mention Wilkens, so we will focus our analysis on Molly.

The Indiana Trial Rules provide, in relevant part, that "[u]pon motion, trial *may* be postponed or continued in the discretion of the court, and *shall* be allowed upon a showing of good cause established by affidavit or other evidence." Ind. Trial Rule 53.5. The standard for review for a trial court's denial of a Motion for Continuance is well established. When a defendant's motion for continuance is made due to the absence of material evidence, absence of a material witness, or illness of the defendant, and the specially enumerated statutory criteria are satisfied, then the defendant is entitled to the continuance as a matter of right. *Vaughn v. State* (1992), Ind., 590 N.E.2d 134, 135; see Ind.Code Ann. § 35–36–7–1 (West 1986). When a motion for continuance does not meet the specially enumerated requirements, the trial court's decision is given substantial deference and is reviewable only for abuse of discretion. *Id.* at 136. It is important to emphasize, however, that there is always a strong presumption that the trial court properly exercised its discretion.

*Elmore v. State,* 657 N.E.2d 1216, 1218 (Ind.1995). The statutory elements referenced in *Elmore* are as follows:

(a) A motion by a defendant to postpone a trial because of the absence of evidence may be made only on affidavit showing:

(1) that the evidence is material;

(2) that due diligence has been used to obtain the evidence; and

(3) the location of the evidence.

(b) If a defendant's motion to postpone is because of the absence of a witness, the affidavit required under subsection (a) must:

(1) show the name and address of the witness, if known;

(2) indicate the probability of procuring the witness's testimony within a reasonable time;

(3) show that the absence of the witness has not been procured by the act of the defendant;

(4) state the facts to which the defendant believes the witness will testify, and include a statement that the defendant believes these facts to be true; and

(5) state that the defendant is unable to prove the facts specified in accordance with subdivision (4) through the use of any other witness whose testimony can be as readily procured.

. . . .

(d) A defendant must file an affidavit for a continuance not later than five (5) days before the date set for trial. If a defendant fails to file an affidavit by this time, then he must establish, to the satisfaction of the court, that he is not at fault for failing to file the affidavit at an earlier date.

Ind.Code § 35–36–7–1(a), (b) and (d).

Laster did not submit an affidavit, but in an oral and written motion, defense counsel represented that Molly had contacted him the Friday before trial and said that she had been present when Smith and Wright planned the robbery and when they divided up the stolen goods. Defense counsel did not know Molly's last name or where she could be found. Defense counsel did not discuss what steps he might take to locate Molly or make any represen-

tation as to the likelihood of finding her within a reasonable time.

The morning of trial, there were fifty-two people who reported for jury duty. The witnesses, including one who had been flown in from Philadelphia, were present and the State was ready to proceed. Given the apparent unlikelihood of locating Molly and the inconvenience and expense of rescheduling the trial, we cannot say that the trial court abused its discretion. The fact that the trial court had earlier granted the State a continuance due to Detective Snyder's unavailability does not alter our conclusion. The State made its motion well in advance of trial, and it does not appear that Laster objected to the continuance.

## II. Sentence

■ Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g on other grounds* 875 N.E.2d 218. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* A trial court may abuse its discretion by issuing an inadequate sentencing statement, finding aggravating or mitigating factors that are not supported by the record, omitting factors that are clearly supported by the record and advanced for consideration, or by finding factors that are improper as a matter of law. *Id.* at 490–91. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 493.

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant has the burden of persuading us that his sentence is inappropriate. *King v. State*, 894 N.E.2d 265, 267 (Ind.Ct. App.2008) (citations omitted). In determining the appropriateness of a sentence, we consider the sentencing tools used by the trial court, such as whether the court suspended part or all of the sentence; whether the time will be served on probation, home detention, in community corrections, or in the Department of Correction; whether the sentences are consecutive or concurrent; and whether the court imposed restitution and fines. *Davidson v. State*, 926 N.E.2d 1023, 1024 (Ind.2010).

■ In this case, we choose to exercise our authority to revise Laster's sentence. As to the nature of his offense, the robberies were enhanced to class B felonies due to the use of a weapon. This enhancement to a B felony adequately reflects the nature of the offense at issue.

As to his character, Laster does have a previous adjudication for disorderly conduct, a conviction of possessing alcohol as a minor, and a conviction of entering a tavern as a minor. At twenty years of age, he was certainly old enough to know that robbery is wrong; however, the record does not paint a picture of someone who is beyond hope of rehabilitation. *See Knight v. State*, 930 N.E.2d 20, 22–23 (Ind. 2010) (in reducing a seventeen-year-old's sentence for eight felonies relating to two robberies, our supreme court noted that imprisoning a young offender for a long period of time might make the person less

susceptible to rehabilitation); *Tyler v. State*, 903 N.E.2d 463, 469 (Ind.2009) (reducing sentence for three sex offenses and a habitual offender enhancement where defendant was twenty-two years old, his previous convictions were unrelated in nature, and there was no evidence of injury or use of force).

At the time of sentencing, Laster was employed and attending college. Thus, he showed potential for being able to pay the restitution ordered, something that would likely be hindered by a lengthy executed sentence. *See Kemp v. State*, 887 N.E.2d 102, 106 (Ind.Ct.App.2008) (reducing sentences for forgery, theft, and corrupt business influence and remanding for the trial court to determine how Kemp should serve the sentence "keeping the goal of monetary restitution to the [victim] in mind"), *trans. denied.* As noted by the trial court, Laster has strong support from his family. The pre-sentence investigation ("PSI") report classified him as a "moderate risk." PSI at 6. Both the PSI and the prosecutor recommended that Laster receive sentences of eight years with two suspended.

We agree with the trial court that the existence of four separate victims justifies consecutive sentences. However, that does not necessarily mean Laster should receive quadruple the amount of time that he would receive if there had only been one victim. *See Sanchez v. State*, 938 N.E.2d 720, 722–23 (Ind.2010) (Sanchez was sentenced to two consecutive forty-year terms for molesting two girls; our supreme court held that consecutive sentences were warranted because there were multiple victims, but reduced one of the sentences to thirty years, noting that there was no evidence that Sanchez used significant force or caused injuries and that he had a minor criminal record consisting mostly of alcohol-related offenses); *Knight*, 930 N.E.2d at 22–23 (Knight was convicted of eight felonies stemming from two robberies committed on the same evening and involving five different victims and received an aggregate sentence of seventy years; noting his young age, his record of only one previous adjudication, and the comparatively short sentence received by a co-defendant, our supreme court ordered all but two of the sentences to be served concurrently for an aggregate sentence of forty years). Our supreme court has emphasized that when conducting our independent review of sentences, we should focus on the aggregate sentence. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind.2008). Because Laster's offenses were fairly typical class B felonies, he exhibited some positive character traits, and the PSI and prosecutor both recommended that Laster receive a partially suspended sentence, we conclude that the forty-year executed sentence imposed by the trial court is inappropriate. We choose to exercise our authority to revise Laster's sentence to eight years executed and two years suspended to probation on each count, with the robbery sentences served consecutively and the burglary sentence concurrently, for a total of thirty-two years executed and eight suspended.

### Conclusion

The trial court did not abuse its discretion by denying Laster's motion for continuance; therefore, we affirm his convictions. We conclude that Laster's sentence is inappropriate; therefore, we remand for the trial court to revise his sentence in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and MATHIAS, J., concur.