## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 25 2019, 6:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kay A. Beehler
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Amanda Schmidtz, *Appellant-Defendant,* v. State of Indiana, *Appellee-Plaintiff.* | September 25, 2019 Court of Appeals Case No. 19A-CR-315 Appeal from the Sullivan Superior Court The Honorable Hugh R. Hunt, Judge Trial Court Cause No. 77D01-1709-F4-671 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Amanda L. Schmidtz was convicted of dealing in a schedule II controlled substance, a Level 4 felony, and found to be an habitual offender. The trial court sentenced Schmidtz to twelve years in the Indiana Department of Correction for the conviction, enhanced by fifteen years for the habitual offender finding. Schmidtz appeals, raising the following issues for our review: 1) whether the State adequately proved her identify as the person who committed the prior felony offenses on which the habitual offender finding was based, 2) whether the trial court abused its discretion in sentencing her, and 3) whether her twenty-seven year sentence is inappropriate in light of the nature of her offenses and her character. Concluding the evidence was sufficient to connect Schmidtz to the three prior felonies alleged in the habitual offender information, the trial court did not abuse its discretion in sentencing Schmidtz, and Schmidtz's sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] In May 2017, a confidential informant working for the Sullivan County Sheriff's Office purchased thirteen tablets of hydrocodone acetaminophen from Schmidtz, who had a valid prescription for the pills. The State charged Schmidtz with one count of dealing in a schedule II controlled substance, a Level 4 felony, and alleged that she was an habitual offender. The habitual offender count alleged Schmidtz had been previously convicted of three prior Class D felonies: 1) operating a vehicle while intoxicated endangering a person

on February 20, 2008, in Vigo Superior Court cause number 84D05-1610-FD-3298 ("Cause 3298"); 2) operating a vehicle as an habitual traffic violator on June 17, 2011, in Sullivan Superior Court cause number 77D01-1007-FD-85 ("Cause 85"); and 3) escape on April 27, 2012, in Sullivan Superior Court cause number 77D01-1108-FD-77 ("Cause 77").

[3] At trial, Schmidtz did not dispute that she sold the pills. *See* Transcript, Volume 3 at 5-6. She did, however, claim that she sold the pills under duress. Beginning in 2013, Schmidtz was involved in an abusive relationship with Jason Donovan. At some point, Donovan began living intermittently in Schmidtz's home. He was physically and verbally abusive to Schmidtz and destructive to her property. Donovan would often steal Schmidtz's prescription drugs and Schmidtz felt there was "was [not] any way to get around it, to get away from it" because if she did not give Donovan "whatever he wanted, which was mainly [her] medicine, then he didn't have any problem with whatever he had to do to get them." Tr., Vol. 2 at 245-46.

[4] In early 2017, Donovan moved out of Schmidtz's home and began residing with a friend, Steve Myers. On May 23, 2017, Myers called Schmidtz and said, "I got you[r] phone number from [Donovan], can I get some pills?" *Id.* at 249. When Schmidtz told him no, Myers said, "[W]e know you have your prescription, we know you got your script filled." *Id.* Schmidtz believed that "[m]entioning [Donovan's] name and leading me to believe that [the pills] were for [Donovan] was a threat to me." Tr., Vol. 3 at 29. Schmidtz quoted Myers a price per pill that was so inflated she thought "maybe they'll go somewhere else

and leave me alone." Tr., Vol. 2 at 250. Instead, Myers said he would come by the next day. Schmidtz felt like "a sitting duck, more or less, [because] they were coming to get 'em and that was that." *Id.* When Myers arrived on May 24, Schmidtz thought Donovan might be waiting in the car and if she did not sell Myers the pills, Myers would "go out and say 'she won't give 'em to me' and [Donovan] would come in and take 'em and beat me up." Tr., Vol. 3 at 3. Schmidtz sold Myers thirteen pills. Unbeknownst to Schmidtz, Myers was acting as a confidential informant for the police and when he visited Schmidtz that day, he was wearing a recording device that captured audio and video of the transaction.

[5] A jury found Schmidtz guilty of dealing as charged in the first phase of the trial. Thereafter, the State presented evidence in the habitual offender phase, calling the Chief Probation Officer for Sullivan County and introducing through her certified records from three previous felony cases and one probation revocation proceeding against "Amanda L. Schmidtz." On the basis of this evidence, the jury found the State had proved Schmidt to be an habitual offender.

[6] At Schmidtz's sentencing hearing, her children testified about the hardship that a lengthy sentence would be to their family and in particular, to Schmidtz's grandchildren. They also testified about Schmidtz's troubled relationship with Donovan. Schmidtz again testified about her relationship with Donovan and how she felt Myers's call was an implicit threat against her from Donovan. She also testified that after her arrest, she worked as a confidential informant for the police for several months and participated in several controlled buys. Schmidtz

acknowledged that her criminal record "is not that good, I know that[, but] when I actually did [those] offenses it was much farther in the past."  Tr., Vol. 3 at 153.  Finally, Schmidtz testified that although she had trouble with alcohol and drugs in the past, there was a lengthy period during which she had been clean and sober until becoming involved with Donovan.

[7] The trial court acknowledged that Schmidtz did not have any convictions in the four or five years preceding this case but noted that this case was Schmidtz's seventh felony conviction overall and "the Court has a real hard time getting past that.  To me that shows a disdain for the law, an inability or unwillingness to abide by our laws here in this state."  *Id.* at 157.  The trial court identified Schmidtz's criminal history as an aggravating factor and found no mitigating factors.  The trial court sentenced Schmidtz to twelve years in the Department of Correction for the dealing conviction, enhanced by fifteen years for the habitual offender finding, for a total sentence of twenty-seven years.  Schmidtz now appeals.

# Discussion and Decision

## I.  Sufficiency of the Evidence

### A.  Standard of Review

[8] We consider a claim of insufficient evidence to support an habitual offender finding the same as any sufficiency claim.  *See Woods v. State*, 939 N.E.2d 676, 677 (Ind. Ct. App. 2010), *trans. denied*.  Therefore, we consider only the

probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or judge witness credibility, as that is the factfinder's role, and we will affirm the adjudication unless no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Evidence is sufficient if an inference may be reasonably drawn from it to support the judgment. *Id.* at 147.

## B. Habitual Offender Status

To establish that Schmidtz was an habitual offender, the State was required to show that she had accumulated three prior unrelated felony convictions and, because all the alleged predicate offenses were Class D felonies, that "not more than ten (10) years have elapsed between the time [she] was released from imprisonment, probation, or parole (whichever is latest) and the time [she] committed the current offense." Ind. Code § 35-50-2-8(d) (2015). Schmidtz claims the evidence during the habitual offender phase of her trial was insufficient to establish her identity as the person who committed the predicate convictions alleged in the habitual offender count.

Here, the State offered the following certified documents to prove that Schmidtz was the same person convicted of the current offense as that convicted of the alleged predicate offenses:

- As to Cause 3298: the information charging "Amanda L. Schmidtz" with Class D felony operating a vehicle while intoxicated endangering a person, the order accepting her plea of guilty and deferring the entry of

judgment and sentencing while she participates in Drug Court, and the sentencing order dated February 20, 2008, Tr., Vol. 1, Exhibit P at 25-32; documents showing Cause 3298 prompted a revocation of her probation in Sullivan County cause number 77D01-0309-FD-81 ("Cause 81") after Schmidtz appeared in Sullivan Superior Court and admitted to violating the terms of her probation by being arrested and entering a Drug Court agreement in Cause 3298, *id.*, Exhibit Q at 33-41;

- As to Cause 85:  the information charging "Amanda L. Schmidtz" with Class D felony operating a vehicle as an habitual traffic violator, and the sentencing order from June 17, 2011, that includes a probation component, *id.*, Exhibit R at 42-44;

- As to Cause 77:  the information charging "Amanda L. Schmidtz" with Class D felony escape, and the change of plea and sentencing order from April 27, 2012, that includes a probation component, *id.*, Exhibit S at 45-47; and

- The testimony of Barbara Lance, chief probation officer in Sullivan County, who testified that she knew Schmidtz even before she became a probation officer, positively identified Schmidtz in court as the person against whom she filed a revocation probation in Cause 81 for her actions in Cause 3298, and positively identified her as "one and the same" person referenced in Causes 85 and 77, Tr., Vol. 3 at 72.

[11] The State must introduce into evidence proper certified and authenticated records of the defendant's prior felony convictions in order to prove beyond a

reasonable doubt the fact of those prior convictions for purposes of adjudicating the defendant an habitual offender. *Dexter v. State*, 959 N.E.2d 235, 238 (Ind. 2012). Although certified copies of judgments or commitments containing the same or similar name as the defendant may be introduced to prove the commission of prior felonies, there must be additional supporting evidence to identify the defendant as the same person named in the documents. *Hernandez v. State*, 716 N.E.2d 948, 953 (Ind. 1999). This proof of identity may be in the form of circumstantial evidence. *Id.* A sufficient connection between the documents and the defendant is made if the evidence yields logical and reasonable inferences from which the trier of fact may determine it was indeed the defendant who was convicted of the two felonies alleged. *Id.*

[12] Here, "Amanda L. Schmidtz," date of birth March 27, 1969, was charged with dealing in a schedule II controlled substance and alleged to be an habitual offender. *See* Appendix, Volume 2 at 14, 71. The certified documents admitted at trial to show prior felony convictions each name "Amanda L. Schmidtz" as the defendant. The charging information in Cause 3298 shows the defendant's date of birth as March 27, 1969. Tr., Vol. 1, Exhibit P at 26. The sentencing order in Cause 85 shows the defendant was forty-two years of age in June 2011. *Id.*, Exhibit R at 43. The sentencing order in Cause 77 shows the defendant was forty-three years of age in April 2012. *Id.*, Exhibit S at 46. Thus, the name and date of birth/age of the defendant in each of those three prior felony cases are consistent with Schmidtz.

[13]     Moreover, Lance testified to her familiarity with Schmidtz. As the chief probation officer in Sullivan County, Lance handles "all the felon cases[.]" Tr., Vol. 3 at 64. Lance personally filed the petition to revoke in Cause 81 based on the Vigo County charges in Cause 3298 and appeared in court for the revocation hearing. Lance affirmed that "the Amanda Schmidtz that [was] on probation [in Cause 81] in 2007 and . . . [the] person who is referenced in [Cause 3298] is . . . in the courtroom today" and pointed her out. *Id.* at 68.[1] Lance also affirmed that the person convicted in Causes 85 and 77 was sentenced to probation in each case and that person and Schmidtz "are one and the same person[.]" *Id.* at 70, 72. Lance's testimony shows a familiarity with Schmidtz and makes a sufficient connection between Schmidtz and the certified documents. *See Oster v. State*, 992 N.E.2d 871, 877-78 (Ind. Ct. App. 2013) (where certified documents introduced in habitual offender proceeding contained "several different . . . names" that were "sufficiently similar to support an inference that they refer to the same person" and a parole officer testified that he had supervised the defendant and the defendant was the same person named in the certified documents, the State produced sufficient evidence to sustain finding that defendant was an habitual offender), *trans. denied*.

---

[1] Schmidtz contends the admission of Exhibit Q, referencing Cause 81 which was not one of the charged predicate offenses, was confusing and that the State attempted to use the probation revocation in Cause 81 as proof of Cause 3298. The State introduced Exhibit Q in order to show how Lance was aware of Cause 3298 and able to identify Schmidtz as the perpetrator of that cause – the documents in Exhibit Q and Lance's testimony show Lance and Schmidtz were both in court for the probation revocation hearing in Cause 81 when Schmidtz admitted to the allegations of Cause 3298. This was necessary because Cause 3298 originated out of a different county.

The State produced sufficient evidence to prove Schmidtz's identity as the person convicted of three previous felonies and therefore, produced sufficient evidence from which the jury could determine beyond a reasonable doubt that Schmidtz is an habitual offender.

# II.  Sentencing

Schmidtz states her sentencing issue as whether "the sentence imposed is an abuse of the court's discretion, and is inappropriate in light of the nature of the offense, and the character of Appellant Schmidtz."  Amended Brief of Appellant at 13.  Her single argument commingles language applicable to both abuse of discretion and inappropriate sentence analyses.  The two are separate inquiries and should be analyzed as such.  *See King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008).  We have therefore attempted to separate her arguments on each issue and will address them in turn.

## A.  Abuse of Discretion

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion.  *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007).  An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom."  *Id*.  The trial court can abuse its discretion by 1) issuing an inadequate sentencing statement, 2) finding aggravating or mitigating factors that are not supported by the record, 3) omitting factors that are clearly

supported by the record and advanced for consideration, 4) or by finding factors that are improper as a matter of law. *Laster v. State*, 956 N.E.2d 187, 193 (Ind. Ct. App. 2011).

[17] Schmidtz identifies several mitigating factors she believes were overlooked: 1) her crime did not cause or threaten serious harm to other persons or property; 2) there are substantial grounds tending to excuse or justify her crime; 3) she had led a law-abiding life for a substantial period of time before committing this crime; and 4) her imprisonment would result in undue hardship to her family. *See* Ind. Code § 35-38-1-7.1.[2] The finding of a mitigating factor is discretionary, and the trial court is neither obligated to accept the defendant's argument as to what constitutes a mitigating factor nor required to give the same weight to mitigating evidence that the defendant would. *Hunter v. State*, 72 N.E.3d 928, 935 (Ind. Ct. App. 2017), *trans. denied*. Furthermore, if the trial court declines to find the existence of a mitigating factor, it is not obligated to explain why it has found that the factor does not exist. *Anglemyer*, 868 N.E.2d at 493. On

---

[2] Schmidtz generally notes "[t]wo separate aspects of the sentencing in this case [that] present troubling revelations." Amended Br. of Appellant at 14. Schmidtz first alleges Lance "testified that her sentence recommendations in general are based in part on whether or not a defendant pleads guilty or goes to trial." *Id.* In context, however, Lance simply indicated that taking responsibility is considered a mitigating factor that she takes into account when making a sentencing recommendation. *See* Tr., Vol. 3 at 145. We see nothing nefarious in this approach. Schmidtz next alleges the trial court's remarks "indicate a philosophy that, because [Schmidtz] exercised her right to trial, there would be no leniency in the sentence." Amended Br. of Appellant at 14. Again, in context, it appears the trial court was simply trying to clarify and understand Schmidtz's point when she testified about her time as a confidential informant and how she believed the State "did [her] dirty[,]" and "gave [her] nothing for it." Tr., Vol. 3 at 137-38. Moreover, the trial court's remarks recognize that any leniency that might be extended to someone who pleaded guilty would not be applicable here. We do not believe the trial court's remarks in context indicate a general sentencing philosophy of punishing those who exercise their right to trial.

appeal, a defendant must show "that the mitigating evidence is both significant and clearly supported by the record." *Hunter*, 72 N.E.3d at 935.

[18] Schmidtz has not shown that the proffered mitigating factors are significant or clearly supported by the record. The fact that her crime did not cause or threaten serious harm to other persons or property is not significant in light of the crime alleged. Her defense of duress was presented to and rejected by the jury and is therefore not supported by the record. The trial court acknowledged the length of time that had passed between Schmidtz's last conviction and this crime, but also noted the number of convictions Schmidtz had accumulated weighed more heavily. And finally, every family suffers some hardship when a family member is incarcerated, but Schmidtz's children and grandchildren do not rely on her for financial support and will suffer no hardship greater than that of any other convicted person's family. The trial court did not abuse its discretion in failing to find any mitigating factors.

## B. Inappropriate Sentence

[19] We may review and revise criminal sentences pursuant to the authority derived from Article 7, Section 6 of the Indiana Constitution. Indiana Appellate Rule 7(B) empowers us to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Because a trial court's judgment "should receive considerable deference[,]" *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008), our principal role is to "leaven the outliers," *id.* at 1225. "Such deference should prevail unless overcome by compelling

evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The defendant bears the burden of persuading this court that his or her sentence is inappropriate, *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006), and we may look to any factors appearing in the record for such a determination, *Stokes v. State*, 947 N.E.2d 1033, 1038 (Ind. Ct. App. 2011), *trans. denied*. The question under Appellate Rule 7(B) analysis is "not whether another sentence is *more* appropriate" but rather "whether the sentence imposed is inappropriate." *King*, 894 N.E.2d at 268. Whether a sentence is inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

[20] The nature of the offense references a defendant's actions in comparison with the elements of the offense. *Cannon v. State*, 99 N.E.3d 274, 280 (Ind. Ct. App. 2018), *trans. denied*. The nature of the offense can be analyzed by using the advisory sentence as a starting point. *Anglemyer*, 868 N.E.2d at 494. The sentencing range for dealing in a schedule II controlled substance, a Level 4 felony, is two to twelve years, with an advisory sentence of six years. Ind. Code § 35-50-2-5.5.

[21]     Schmidtz does not dispute that she sold thirteen of her prescription Norco pills to Myers. Norco[3] is a basically an "opiate with Tylenol," tr., vol. 2 at 144, that can be "very addictive[,]" *id.* at 142. Her offense was elevated from a Level 6 felony to a Level 4 felony because she sold at least five grams but less than ten grams of the drug. Ind. Code § 35-48-4-2(a)(1)(C), (d)(1). The trial court noted that the video tape of the deal shows Schmidtz "laughing, . . . cackling, . . . someone selling drugs there because they wanted to and not because they were under duress." Tr., Vol. 3 at 157. Indeed, Schmidtz was selling to someone she knew and alleged that if she did not sell the pills, she believed they would be stolen from her. But Schmidtz did not call the police to report the supposed threat or alert them to the coming transaction, and she willingly set an inflated price. Schmidtz has shown no compelling evidence portraying her offense in a positive light and therefore, we cannot say the nature of her offense warrants a different sentence.

[22]     The character of the offender refers to "general sentencing considerations and the relevant aggravating and mitigating circumstances." *Cannon*, 99 N.E.3d at 280. In conducting our review, we consider the aggravating and mitigating factors found by the trial court, but also any other factors appearing in the record. *Walters v. State*, 68 N.E.3d 1097, 1101 (Ind. Ct. App. 2017), *trans. denied*. One relevant factor in considering the character of the defendant is

---

[3] Norco and Vicodin are among the brand names for hydrocodone acetaminophen. Tr., Vol. 2 at 141, 143.

criminal history. *Wells v. State*, 2 N.E.3d 123, 131 (Ind. Ct. App. 2014), *trans. denied*.

[23] Schmidtz has a criminal record dating back to 1995. The majority of her criminal convictions – three misdemeanor and six felony convictions prior to this case – are substance abuse related. Lance testified at the sentencing hearing that Schmidtz was not a good candidate for a shorter sentence or a community corrections or probationary sentence because "[s]he does not do well on probation, she's been revoked twice, she's violated [her current] bond." Tr., Vol. 3 at 143. Schmidtz violated her current bond by being charged in two additional cases after being charged in this case; the trial court dismissed those cases on the State's motion when it sentenced Schmidtz in this case. *See* Appealed Order at 2. Participating in additional criminal conduct even while in the midst of being prosecuted for this offense does not reflect well on Schmidtz's character.

[24] Schmidtz does not offer clear examples of her good character. She mentions her good relationship with her grandchildren and references her work as a confidential informant. She argues that there were substantial grounds to excuse or justify her actions. None of these things amount to compelling evidence that her character is so virtuous or consistently positive as to overcome her criminal history and current actions.

Schmidtz has not met her burden of persuading us that her sentence is inappropriate in light of the nature of her offense and her character. Her twenty-seven-year aggregate sentence is therefore affirmed.

# Conclusion

The State presented sufficient evidence to show Schmidtz had committed three prior unrelated felonies and to prove that she was an habitual offender. The trial court did not abuse its discretion in sentencing Schmidtz and her sentence is not inappropriate. We therefore affirm the habitual offender finding and Schmidtz's sentence.

Affirmed.

Mathias, J., and Pyle, J., concur.