Bradford, Judge.
Case Summary
[1] In November of 2015, police visited the Kokomo home that Appellant-Defendant *277 Dion Cannon shared with Alexandra Linville to execute an arrest warrant on Cannon. While one officer knocked on the door, another watching through a window observed Cannon place something on a shelf before answering the door. After arresting Cannon and obtaining a search warrant, police searching the shelves found marijuana, a loaded handgun, and approximately eighty-eight grams of heroin inside a vase. During Cannon's trial on several charges, Linville testified over objection that she had assisted Cannon in dealing drugs prior to November of 2015 and that he sold heroin to support himself. The jury found Cannon guilty of Level 3 felony possession of a narcotic drug, Class A misdemeanor possession of marijuana, and Level 6 felony maintaining a common nuisance. The trial court sentenced Cannon to an aggregate sentence of fifteen years of incarceration. Cannon argues that the trial court abused its discretion in admitting Linville's testimony regarding prior drug-dealing activity, the trial court's final instruction regarding the evidence of other bad acts was ineffective, and his sentence is inappropriately harsh. Because we conclude that any error in the admission of evidence was harmless and that Cannon has not established that his sentence is inappropriate, we affirm.
Facts and Procedural History
[2] On November 18, 2015, Cannon had been in a relationship with Linville for eight or nine years; shared a child born on December 4, 2013, with her; and lived with her in her Kokomo home. On November 18, 2015, Cannon went to Linville's place of business and borrowed $1800 from her (in addition to the $2200 he already had), money he told Linville he intended to spend on drugs. Later that evening, Kokomo Police Department officers went to Cannon and Linville's home to serve an outstanding arrest warrant on Cannon.
[3] When Kokomo Police Officer Jayson Maynard knocked on the door, Cannon, who was alone in the house at the time, yelled, "Oh s***, just a minute." Tr. Vol. I 56. From a window, Sergeant Gary Taylor observed Cannon take something from a counter, conceal it in his hand, and place it somewhere in a shelving unit near the door. When Cannon opened the door, officers detected the odor of burnt marijuana coming from within the residence. After Cannon was handcuffed and read his rights, Sergeant Taylor asked Cannon what he had put on the shelf. Cannon replied that "it was marijuana, and that's all the illegal drugs that [I have] in the house." Tr. Vol. I p. 57. Officers obtained a search warrant for the house.
[4] Inside a child's bedroom, officers found an AK-47 on a shelf in a closet. Officers found a handgun on a high shelf in a bathroom. On the shelving unit where Sergeant Taylor had observed Cannon place something, the police discovered a handgun with a long "banana clip" with extra rounds. Tr. Vol. I p. 61. Police also found 16.23 grams of marijuana and a red vase that contained approximately 88 grams of heroin on the shelving unit. Another white substance, which appeared to be a possible cutting agent, was found in the house. A digital scale was found in a kitchen cabinet.
[5] On November 20, 2015, the State charged Cannon with Level 2 felony dealing in a narcotic drug, Level 3 felony possession of a narcotic drug, Level 5 felony neglect of a dependent, Level 6 felony theft of a firearm, Level 6 felony possession of marijuana, and Level 6 felony maintaining a common nuisance. On April 21, 2017, the State amended the charging information to reduce Cannon's possession of marijuana charge to a Class A misdemeanor. Jury trial was conducted on April 28, May 1, and May 2, 2017.
*278 [6] Linville testified for the State at Cannon's trial. Over objection, Linville testified that she would assist Cannon in drug-dealing by "taking him places[,]" she had driven him someplace in August of 2015 to sell heroin, and he sold heroin and cocaine to support himself. Tr. Vol. I p. 136. The trial court allowed the testimony as relevant to the questions of Cannon's intent and knowledge. Linville also testified that she had never stored illegal drugs in the red vase and had never seen the heroin found inside the red vase before it was shown to her at trial. Among its other final instructions, the trial court instructed the jury that
Evidence has been introduced that the defendant was involved in crimes, wrongful conduct or bad acts other than those charged in the Informations. This evidence has been received solely on the issue of defendant's intent or knowledge. This evidence should be considered by you only for the limited purpose for which it was received.
Tr. Vol. II 32-33.
[7] The jury found Cannon guilty of Level 3 felony possession of a narcotic drug, Class A misdemeanor possession of marijuana, and Level 6 felony maintaining a common nuisance. On June 13, 2017, the trial court sentenced Cannon to fifteen years of incarceration for possession of a narcotic drug, one year for possession of marijuana, and two-and-a-half years for maintaining a common nuisance, all three sentences to be served concurrently.
Discussion and Decision
I. Evidence Concerning Other Bad Acts
[8] Cannon contends that the trial court abused its discretion in admitting testimony from Linville regarding other bad acts by him, specifically drug-dealing activity not charged in this case. We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. Curley v. State , 777 N.E.2d 58, 60 (Ind. Ct. App. 2002). An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Id. The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. Moore v. State , 839 N.E.2d 178, 182 (Ind. Ct. App. 2005). We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. Hirshey v. State , 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006).
[9] Indiana Evidence Rule 404(b) provides that, in general, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." We need not address the merits of Cannon's evidentiary challenge if we conclude that "[e]rrors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of the defendant." Goudy v. State , 689 N.E.2d 686, 694 (Ind. 1997). "The erroneous admission of evidence is harmless error where a guilty finding is supported by substantial independent evidence of guilt." Bates v. State , 495 N.E.2d 176, 178 (Ind. 1986). "However, reversal is warranted if the record as a whole reveals that the improper evidence was likely to have had a prejudicial impact on the average juror such that it contributed to the verdict." Sundling v. State , 679 N.E.2d 988, 994 (Ind. Ct. App. 1997).
[10] We conclude that the admission of evidence of other bad acts, even if *279 the result of an abuse of discretion,[1] can only be considered harmless. Although the heroin was not found on Cannon's person,
[t]here is ... no requirement that the accused's actual possession of the contraband must be shown to have existed at precisely the same time as the law enforcement agency's discovery of the contraband. Put another way, conviction for possessory offenses does not depend on the accused being "caught red-handed" in the act by the police.
Wilburn v. State , 442 N.E.2d 1098, 1101 (Ind. 1982).
[11] Cases, like this one, where the State seeks to prove that the defendant's possession of the contraband occurred at a time other than its discovery are referred to as "constructive possession" cases.
A defendant is in the constructive possession of drugs when the State shows that the defendant has both (i) the intent to maintain dominion and control over the drugs and (ii) the capability to maintain dominion and control over the drugs. Lampkins v. State , 682 N.E.2d 1268, 1275 (Ind. 1997), on reh'g , 685 N.E.2d 698 (Ind. 1997). The proof of a possessory interest in the premises on which illegal drugs are found is adequate to show the capability to maintain dominion and control over the items in question. Davenport v. State , 464 N.E.2d 1302, 1307 (Ind. 1984). In essence the law infers that the party in possession of the premises is capable of exercising dominion and control over all items on the premises. See id. ; Martin v. State , 175 Ind. App. 503, 372 N.E.2d 1194, 1197 (1978) ("[A] house or apartment used as a residence is controlled by the person who lives in it and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee."). And this is so whether possession of the premises is exclusive or not.
However, the law takes a different view when applying the intent prong of constructive possession. When a defendant's possession of the premises on which drugs are found is not exclusive, then the inference of intent to maintain dominion and control over the drugs "must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence." Lampkins , 682 N.E.2d at 1275.
Gee v. State , 810 N.E.2d 338, 340-41 (Ind. 2004). A non-exhaustive list of what such additional circumstances may be includes "(1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant." Gee , 810 N.E.2d at 341 (citing Henderson v. State , 715 N.E.2d 833, 836 (Ind. 1999) ).[2] As we have noted, "[i]n each of these instances of 'additional circumstances' exists the probability that the presence and character of *280 the contraband was noticed by the defendant. Accordingly, the listed circumstances are not exhaustive. Other circumstances could just as reasonably demonstrate the requisite knowledge." Carnes v. State , 480 N.E.2d 581, 586 (Ind. Ct. App. 1985) (collecting cases that contain the "additional circumstances" comprising the list in Gee ).
[12] Cannon does not dispute that he had a possessory interest in the house he shared with Linville, a fact sufficient to show his capability to maintain dominion and control over the heroin. Additional circumstances also point to Cannon's knowledge of the presence and nature of-and his intent to maintain dominion and control of-the heroin. First and foremost is Linville's incriminating testimony. Linville testified that Cannon received $1800 from her on November 18, 2015, and told her that he was planning on buying drugs with the money. Later that day, police executed a search warrant on the house that the couple shared and discovered a substantial amount of heroin, which Linville testified she had never seen before. It is reasonable to infer that the heroin was Cannon's and that he put it in the vase. Moreover, the heroin was found on a shelving unit very near other items that were Cannon's, including a handgun that Linville testified was his and marijuana that he admitted was his. While this evidence of Cannon's guilt would be enough by itself to render any error harmless, there is more.
[13] The jury was specifically instructed to use evidence of Cannon's other bad acts only for the purposes of evaluating his intent or knowledge, which is presumed to cure any error that might have occurred, unless Cannon can show otherwise, which he did not do. See Hyppolite v. State , 774 N.E.2d 584, 598 (Ind. Ct. App. 2002) ("The trial court gave the jury an admonishment concerning the situation, and that is presumed to cure any error."), trans. denied ; see also Hackney v. State , 649 N.E.2d 690, 694 (Ind. Ct. App. 1995) ("A proper admonishment to the jury is presumed to cure any alleged error, unless the contrary is shown."), trans. denied . Cannon limits his challenge to the timing of the admonition, claiming that it was error to deliver it during final instructions. Cannon, however, offers no supporting authority for this challenge, and our research has uncovered none. As for rebutting the presumption that the trial court's instruction cured any error, Cannon points to no indication in the record to suggest that the jury did not follow the trial court's instruction on this point, and our own review has uncovered none. Cannon has failed to establish that the trial court's admonition failed to cure any error that might have occurred. Given the substantial independent evidence establishing Cannon's guilt and the trial court's admonition to the jury, we conclude that any error the trial court may have made in admitting evidence of other bad acts can only be considered harmless.
II. Appropriateness of Sentence
[14] This Court will revise a sentence authorized by statute only "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The question is not whether another sentence is more appropriate, but whether Cannon's sentence is inappropriate. King v. State , 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The "nature of the offense" refers to a defendant's actions in comparison with the elements of the offense. Cardwell v. State , 895 N.E.2d 1219, 1224 (Ind. 2008). The "character of the offender" refers to "general sentencing considerations and the relevant aggravating and mitigating circumstances." Douglas v. State , 878 N.E.2d 873, 881 (Ind. Ct. App. 2007).
*281 [15] Cannon has the burden of proving that his sentence is inappropriate in light of the nature of the offense and his character. Childress v. State , 848 N.E.2d 1073, 1080 (Ind. 2006). "[Deference to trial courts] should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." Stephenson v. State , 29 N.E.3d 111, 122 (Ind. 2015). The trial court imposed an aggregate sentence of fifteen years of incarceration, with the sentencing range for a Level 3 felony (his most serious conviction) being three to sixteen years with nine as the advisory. See Ind. Code § 35-50-2-5(b).
[16] The nature of Cannon's offenses justifies his fifteen-year sentence. Cannon was convicted of heroin and marijuana possession and maintaining a common nuisance. Cannon possessed approximately eighty-eight grams of heroin, over three times the amount necessary to prove a Level 3 felony possession charge. See Ind. Code § 35-48-4-6(d)(1) (providing that, to be a Level 3 felony, the defendant must possess "at least twenty-eight (28) grams" of the narcotic drug). Cannon also possessed over sixteen grams of marijuana. Perhaps most disturbing, considering that Cannon shared his house with his not-yet-two-year-old child, was the presence of no fewer than three loaded firearms, including one that was found in the child's bedroom. The nature of Cannon's offenses justifies his enhanced sentence.
[17] Cannon's character, especially as revealed by his lengthy criminal history, also justifies his enhanced sentence. Cannon, born in September of 1988, accumulated juvenile delinquency adjudications for habitual disobedience of a parent, guardian, or custodian; theft; and battery resulting in bodily injury and was taken into custody a total of eight times. (Appellant's App. Vol. II 124-26). As an adult, Cannon has prior convictions for two felonies and ten misdemeanors, including Class D felony marijuana possession, Class D felony operating a vehicle as a habitual traffic violator, Class A misdemeanor criminal trespass, Class A misdemeanor possession of marijuana/hash oil/hashish, Class A misdemeanor battery resulting in bodily injury, Class A misdemeanor driving never having received a license, Class B misdemeanor visiting a common nuisance, two counts of Class B misdemeanor public intoxication, two counts of Class C misdemeanor driving never having received a license, and Class C misdemeanor operating with blood alcohol concentration of 0.08 but less than 0.15. Cannon has been found to be non-compliant with provisions of community supervision on four occasions. As of sentencing in this case, Cannon has charges pending for four more felony drug-dealing charges, set to go to trial in June of 2017. Cannon admitted that he used marijuana and heroin daily before his arrest on November 18, 2015. In summary, Cannon's history, at the very least, indicates that he has serious issues with substance abuse that he has chosen not to address, despite his frequent contacts with the criminal justice system and recently becoming a father. In light of the nature of his offenses and his character, Cannon has failed to establish that his fifteen-year sentence is inappropriately harsh.
[18] We affirm the judgment of the trial court.
Crone, J., concurs.
Robb, J., dissents with opinion.

While we conclude that we do not need to reach the question of whether the trial court abused its discretion in admitting evidence of other bad acts by Cannon, we acknowledge the dissent's extremely thorough and scholarly discussion of the issue.

We wish to emphasize that this list is nothing more than a collection of circumstances that have been found sufficient to prove constructive possession in particular cases, not a test with elements to be satisfied or factors to be weighed. In many cases, some or all of the listed circumstances will simply not be relevant.