## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 11 2019, 10:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Theodore J. Minch
Sovich Minch, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy Dale Alford,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 11, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1152<br><br>Appeal from the Shelby Superior Court<br><br>The Honorable R. Kent Apsley, Judge<br><br>Trial Court Cause No.<br>73D01-1703-F1-3 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Timothy Alford was convicted of child molesting, a Level 1 felony, and admitted to being an habitual offender. The trial court sentenced him to thirty-five years for the conviction, enhanced by an additional ten years for the habitual offender finding. Alford appeals, raising two issues for our review: 1) whether the evidence was sufficient to support his conviction for child molesting and 2) whether the forty-five year sentence is inappropriate in light of the nature of his offense and his character. Concluding there was sufficient evidence to support his conviction and that his sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] S.M. was born on May 11, 2001. His parents, Jeremy and Stacy, were divorced when he was very young, and Stacy had primary physical custody of S.M., with Jeremy having parenting time every other weekend. Jeremy remarried and he and his current wife, Sara, have three other children.[1] In 2012, after Jeremy and Sara had a baby, Jeremy and S.M. lost contact.

[3] In 2014, while S.M. continued to be in her physical custody, Stacy was running a daycare out of the first floor of her home on West Broadway in Shelbyville. Beginning in October 2014, Alford assisted Stacy with the daycare. Stacy knew

---

[1] Two of the children are Sara's from prior to her marriage to Jeremy; they have one child together.

Alford from having dated his brother sometime earlier. S.M. was also acquainted with Alford and "thought he was one of my friends." Transcript, Volume 1 at 151. In the fall of 2014, S.M. was thirteen years old and a freshman in high school. He liked video games and would usually come home from school and go straight to his room on the second floor to play videogames.

[4] Sometime that fall, Alford entered S.M.'s room and laid on S.M.'s bed behind him while S.M. was laying on his right side playing a game. After a while, Alford got up and left the room. On a second occasion, Alford again entered S.M.'s room and laid on S.M.'s bed behind him while S.M. was watching YouTube. This time, however, Alford reached around with his hand and began rubbing S.M.'s penis over his shorts until S.M. got an erection. Alford then left the room. On another day "[n]ot very much later," *id.* at 152, Alford again entered S.M.'s bedroom while S.M. was playing videogames and laid on S.M.'s bed behind S.M. He reached around with his hand and began stroking S.M.'s penis until S.M. became erect. Then he pulled down S.M.'s shorts and put his mouth on S.M.'s penis until S.M. ejaculated. On a fourth occasion, S.M. was asleep in his bed when he woke up to find Alford had pulled his shorts down and had his mouth on S.M.'s penis. After S.M. ejaculated, Alford left the room. Each time Alford entered S.M.'s room, S.M. "thought if I ignored him he'd leave me alone." *Id.* at 158. S.M. was "[c]onfused" and "didn't understand how [he] was supposed to feel or . . . why [Alford] was doing it." *Id.* at 164. S.M. did not tell his mother about these incidents because he "didn't really know how to tell her [and] didn't trust her[.]" *Id.* at 163. In January

2015, Stacy, with Alford's help, moved the daycare to a new location. S.M. testified Alford had touched him inappropriately exclusively at the Broadway house.

[5] On S.M.'s fourteenth birthday, in May 2015, Jeremy reached out to S.M. and they began a regular parenting time schedule again. After Stacy's boyfriend moved into her house in late 2016, S.M. asked to live with Jeremy and Sara because he thought the boyfriend was violent. Jeremy filed a petition to modify custody in late October 2016 and when Stacy was served with the petition, she told S.M. to pack his things. From that point on, S.M. lived with Jeremy and Sara. Custody was officially modified by agreement on April 7, 2017.

[6] Once S.M. moved into their home permanently, Sara observed behaviors that caused her to be concerned about him. In November 2016, after S.M. had been with Jeremy and Sara full time for approximately three weeks, S.M. told Sara he wanted to be put on antidepressants. Sara questioned him, trying to find out what was causing S.M. to be depressed. S.M. eventually disclosed the abuse by Alford. Sara immediately called Jeremy and together, they contacted the Indianapolis Metropolitan Police Department ("IMPD"). IMPD referred them to the Shelbyville Police Department because the events occurred there. Shelbyville Police took a report on November 17, 2016, of possible child molesting and arranged for S.M. to be interviewed by specially trained personnel at the Child Advocacy Center in December 2016. Detective Brian Roberts interviewed Alford thereafter. Alford stated that he worked for Stacy beginning in October 2014 at her daycare on West Broadway, that he was alone

with S.M. frequently, and that he would sometimes go to S.M.'s room and lay on his bed with him while he was playing videogames. Alford denied any sexual contact.

[7] In March 2017, the State charged Alford with child molesting, a Level 1 felony; child solicitation, a Level 5 felony; and alleged he was an habitual offender. A jury found Alford guilty of both child molesting and child solicitation. Thereafter, Alford admitted that he was an habitual offender. As part of that admission, Alford and the State agreed that any habitual offender enhancement would be capped at fifteen years.

[8] Prior to sentencing, Alford filed a motion for judgment on the evidence on the child solicitation charge, and the trial court and the State both agreed that there was no evidence elicited at trial to support that charge. The trial court therefore granted the motion and Alford was sentenced only for child molesting. The trial court found as mitigating circumstances that incarceration would be a hardship for Alford because he had a number of medical conditions and that he pleaded guilty to the habitual offender enhancement, eliminating the need to conduct a second phase of his trial and accepting responsibility for that charge. The trial court found as aggravating circumstances Alford's extensive criminal history, his lack of success while on probation, and that he violated a condition of his release in this case by appearing in court while in the possession of contraband and controlled substances, incurring new charges. The trial court specifically rejected the State's allegation that Alford was in a position of care, custody, or control with respect to S.M. Finding that Alford was not "the worst

of the worst of the worst" but that there were "significant aggravators," the trial court sentenced Alford to thirty-five years for the child molesting conviction, enhanced by ten years for the habitual offender finding. Tr., Vol. 2 at 182. Alford now appeals his conviction and sentence.

# Discussion and Decision

## I. Sufficiency of the Evidence

### A. Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We consider only the evidence supporting the judgment and any reasonable inferences drawn therefrom, *id*., and we will affirm the conviction "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (citation omitted).

### B. Evidence of Child Molesting

Alford was convicted of child molesting as Level 1 felony, which required proof beyond a reasonable doubt that Alford, being at least twenty-one years of age,[2]

---

[2] There is no dispute that Alford was older than twenty-one in the fall of 2014.

knowingly or intentionally performed other sexual conduct with S.M., a child under fourteen years of age. Ind. Code § 35-42-4-3(a)(1). "Other sexual conduct" includes an act involving a sex organ of one person and the mouth of another person. Ind. Code § 35-31.5-2-221.5(1).

[11] Alford first contends the State failed to prove that S.M. was thirteen at the time of the offense because "S.M. seemed unsure of when and how old he was in his testimony regarding when he was molested[.]" Opening Brief of Appellant at 15. Alford focuses on the following exchange during S.M.'s direct examination:

> Q: And we talked a lot about that Fall of 2014 time period. Is that the time that we're talking about or is it a different time period that we're talking about for when these touching [sic] would have happened?
>
> A: Just that time period.
>
> Q: When you would have been what age?
>
> A: When I would have been 14.
>
> Q: Okay, well . . .
>
> A: Thirteen (13), yeah.
>
> Q: So you were born in 2001, right?
>
> A: Yes.

Q: May of 2001, so you would have turned 14 then May of 2000
. . .

A: '15.

Q: What year?

A: 2015.

Q: '15, okay. So then Fall of 2014.

A: I would have been 13.

Tr., Vol. 1 at 145-46. It is true that S.M. misspoke on that one occasion. However, on all other occasions, S.M. consistently stated that the molestation occurred in 2014, in the Broadway house, when he was thirteen years old. Despite Alford's contention that S.M. only corrected himself upon leading questioning by the State, it appears S.M. actually corrected himself. This timeline also fits with his father and step-mother's testimonies about when they resumed contact with him and when he came to live with them as well as with Alford's testimony about when he worked for Stacy at the Broadway house. There was sufficient evidence beyond a reasonable doubt that S.M. was thirteen when the molestation occurred.

[12] Alford also contends that S.M.'s testimony is inherently unreliable because there were no eyewitnesses, no forensic evidence, no corroborating evidence, it occurred two years before it was reported, and S.M. had a motive to fabricate a

reason for his custody to be changed to his father. Alford acknowledges that the uncorroborated testimony of the victim alone is sufficient to sustain a conviction for child molesting. *See Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). He argues, however, that S.M.'s testimony is incredibly dubious.

[13] The incredible dubiosity rule allows the reviewing court to impinge upon a fact finder's responsibility to judge the credibility of the witnesses when confronted with evidence that is "so unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone." *Moore v. State*, 27 N.E.3d 749, 751 (Ind. 2015). The rule is applied in limited circumstances, namely where there is "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Id*. at 756. Application of the incredible dubiosity rule is "rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). "[W]hile incredible dubiosity provides a standard that is 'not impossible' to meet, it is a 'difficult standard to meet, [and] one that requires great ambiguity and inconsistency in the evidence.'" *Moore*, 27 N.E.3d at 756 (quoting *Edwards v. State*, 753 N.E.2d 618, 622 (Ind. 2001)).

[14] In applying the *Moore* factors to this case, we conclude the incredible dubiosity rule is inapplicable. S.M.'s testimony is not inherently contradictory or equivocal. That a child waited two years until he was in a position to tell a person he trusted about an upsetting event is not so improbable that no

reasonable person could believe the allegations. If S.M. was so upset with his mother that he would fabricate allegations so that his mother would lose custody of him, it seems unlikely he would accuse a peripheral person in the household of child molesting rather than make direct allegations against his mother or her boyfriend. Moreover, there was circumstantial evidence supporting Alford's guilt. Alford himself testified that he worked in the home during the timeframe S.M. alleges he was molested, that he was alone with S.M. frequently, and that he would lay on S.M.'s bed with him while S.M. was playing videogames.

[15] Alford has failed to establish that the limited exception of the incredible dubiosity rule applies, and we decline to disturb the jury's determination that S.M.'s testimony was more credible than Alford's denial. S.M. testified that when he was thirteen years old, Alford put his mouth on S.M.'s penis. The State proved by sufficient evidence that Alford committed child molesting, a Level 1 felony.

## II. Inappropriate Sentence

### A. Standard of Review

[16] "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "[T]he question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is

whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008).

[17] The defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Deference to the trial court's sentencing decision should prevail unless it can be overcome by compelling evidence "portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). "The principal role of appellate review should be to attempt to leaven the outliers . . . not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

## B.  Alford's Sentence

[18] Alford's argument does not comment specifically upon the nature of his offense or his character. Instead, Alford argues that the sentence of forty-five years "is, effectively, a death sentence" because Alford was fifty-two years old when sentenced and "in extraordinarily poor health[.]" Br. of Appellant at 17. Alford points out that the Shelby County Probation Department recommended a sentence of thirty-three years. We nonetheless address the two prongs of Rule 7(B) for assessing whether a sentence is inappropriate.

[19] The nature of the offense refers to a defendant's actions in comparison with the elements of the offense. *Cannon v. State*, 99 N.E.3d 274, 280 (Ind. Ct. App. 2018), *trans. denied*. The nature of the offense can be analyzed by using the advisory sentence as a starting point. *Anglemyer*, 868 N.E.2d at 494.

[20] Alford was found guilty of one count of Level 1 felony child molesting and was found to be an habitual offender. He received a sentence of thirty-five years for his conviction, enhanced by ten years for the habitual offender finding. The sentencing range for a Level 1 felony is between twenty years and forty years with an advisory sentence of thirty years. Ind. Code § 35-50-2-4(b). The sentencing range for the habitual offender finding is between six years and twenty years, Ind. Code § 35-50-2-8(i)(1), but due to an agreement between the parties when Alford admitted his habitual offender status, the enhancement was capped at fifteen years. The trial court noted at sentencing that "[t]his is an egregious case, there are significant aggravators, but it is probably in the realm of Level 1 Felonies not the worst of the worst . . . and therefore the maximum sentence is not appropriate." Tr., Vol. 2 at 182. Alford was charged with one count of child molesting, but S.M. testified there were several separate acts. These acts presumably occurred when other children were in the house because the house also served as a daycare facility. We agree with the trial court that this is not the worst of offenses, but an aggravated, less-than-maximum sentence is not inappropriate.

[21] The character of the offender refers to "general sentencing considerations and the relevant aggravating and mitigating circumstances." *Cannon*, 99 N.E.3d at

280. "We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate." *Stephenson v. State*, 53 N.E.3d 557, 561 (Ind. Ct. App. 2016). When evaluating the character of the offender, we consider his or her criminal history a relevant factor. *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017), *trans. denied.* "The significance of [a defendant's] criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense." *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013).

[22] Alford's criminal history consists of five prior misdemeanor convictions and three prior felony convictions. These convictions are primarily for drug offenses; he has no priors for offenses against a person. He has been on probation four times. He violated the terms of his probation in three of those instances and his probation was revoked in two cases. The trial court noted that it ordered Alford taken into custody at the conclusion of his trial and he was found to be in possession of drugs and contraband when he arrived at the county jail. The trial court found this to be "the ultimate contempt of this Court and this process." Tr., Vol. 2 at 182. Although Alford's criminal history is not related to the current offense in gravity or nature, there are a number of prior offenses, and his disregard for the law is apparent in his blatant commission of a crime while in court. As for Alford's sole argument about his advanced age and poor health, neither of these are virtuous character traits that indicate his sentence is inappropriate.

After considering the nature of Alford's crime and his character, we conclude his sentence is not inappropriate.

# Conclusion

The State presented sufficient evidence to support Alford's conviction of child molesting, and his aggregate sentence of forty-five years is not inappropriate. Accordingly, his conviction and sentence are affirmed.

Affirmed.

Riley, J., and Kirsch, J., concur.