# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 08 2019, 6:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Dustin Wayne Eldridge,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 8, 2019

Court of Appeals Case No.
18A-CR-1133

Appeal from the Clinton Superior Court

The Honorable Justin H. Hunter, Judge

Trial Court Cause No.
12D01-1610-F5-897

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Dustin Eldridge was convicted of dealing in methamphetamine, a Level 5 felony; maintaining a common nuisance, a Level 6 felony; and possession of a controlled substance, a Class A misdemeanor. Eldridge now appeals his convictions, raising one issue for our review: whether the evidence was sufficient to support his convictions. Concluding the evidence was sufficient to support Eldridge's convictions of dealing in methamphetamine and possession of a controlled substance but insufficient to prove maintaining a common nuisance, we affirm in part and reverse and remand in part.

# Facts and Procedural History

[2] On August 30, 2016, Eldridge and Allen Isenburg were working together doing tree removal. Eldridge had borrowed a dump truck from a friend for the work, and Isenburg drove because Eldridge did not have a driver's license. After a long day trying unsuccessfully to remove a tree, Isenburg and Eldridge drove to Wal-Mart after Ashlee Lanum "initiated them to meet [her] there" by texting Eldridge to ask "if he was looking into meeting [her.]" Transcript, Volume I at 165-66. When Isenburg and Eldridge met Lanum in the Wal-Mart parking lot after midnight, she said she had "some stuff that [she] wanted to get rid of" and asked for a ride. *Id.* at 166. Lanum testified that she had three packets of methamphetamine in the front pocket of her shorts and pills in an Altoids tin. She said it was "probably not" clear to Isenburg and Eldridge that the "stuff" she referenced was drugs. *Id.* Lanum climbed over Eldridge, who was sitting

in the passenger seat, and sat between Isenburg and Eldridge. Isenburg then drove to Marlaina Lybrook's home in Frankfort at Elridge's direction. Eldridge spoke to Lybrook by phone a couple of times during the journey.

[3] When they arrived, Eldridge called Lybrook and told her to come out to the truck that was parked in front of her house. Lybrook did come outside, but she was angry that they had come to the front of her house because she had outstanding warrants and was trying to avoid exposure. While Lybrook was standing on the passenger side of the truck yelling at Eldridge, Lanum said that she had methamphetamine to sell and also mentioned "something about Lortabs." *Id.* at 153. Unfortunately for Lybrook and the occupants of the truck, Clinton County Sheriff's Deputies Farlow and Knapp arrived at Lybrook's residence about this time to serve the arrest warrant on her.

[4] As Deputy Farlow approached the vehicle on the passenger side, he saw Eldridge move his hands as if he was taking something from his lap and moving it between his seat and the door. Deputy Farlow asked all occupants of the vehicle to put their hands on the dash while Deputy Knapp detained Lybrook and called the Frankfort Police Department for backup. As the occupants raised their hands, Deputy Farlow saw Eldridge had a small, empty plastic bag in his hand. Through his "training and experience," Deputy Farlow "knew these bags to be used to carry drugs." Appellant's Appendix, Volume 3 at 14. Deputy Farlow asked Eldridge to step out of the vehicle, and as he did so, Deputy Farlow saw a syringe on the floor of the vehicle. By this time, Frankfort police officers had arrived and asked both Isenburg and Lanum to

exit the vehicle. As they exited, a Frankfort police officer saw a second syringe on the driver's side floor.

[5] During a subsequent search of the vehicle, officers found a black bag on the seat between where Eldridge and Lanum had been sitting. The bag contained a lighter and an Altoids tin. Inside the tin was a plastic bag containing hydrocodone and oxycodone pills and multiple small plastic bags similar to the bag Eldridge had been holding earlier. All three occupants of the vehicle disclaimed knowledge of the black bag or its contents and were placed in custody.

[6] Eldridge also had a backpack in the truck that he allowed to be searched; officers found a scale, a pack of small clear plastic bags, and multiple syringes. Eldridge claimed he was diabetic, but no insulin was found in the backpack or the truck. All parties were transported to the Clinton County Jail. After Lanum was taken from her transport vehicle, the officer who transported her searched the back seat of his vehicle and found a small baggie with a white substance tucked in the seat. The substance field tested positive for methamphetamine. Lanum testified that she had tried to get rid of the methamphetamine in her possession by eating it, but was only able to ingest two bags and had to stick the third bag in the seat.

[7] The State charged Eldridge with dealing in methamphetamine, a Level 5 felony; maintaining a common nuisance, a Level 6 felony; and possession of a

controlled substance, a Class A misdemeanor.[1] Eldridge was tried by a jury. At the conclusion of the State's evidence, Eldridge made a motion for judgment on the evidence with respect to the dealing and possession counts. The trial court denied the motion and the defense rested without presenting any witnesses. The State argued during its closing argument that Eldridge aided Lanum in her attempts to deal methamphetamine and the trial court instructed the jury about accomplice liability. *See* Tr., Vol. I at 183, 192-93. The trial court also instructed the jury about actual and constructive possession. *See id.* at 183. The jury found Eldridge guilty on all counts. Eldridge now appeals.

# Discussion and Decision

## I. Standard of Review

[8] In reviewing the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn therefrom, *id.*, and we will affirm the conviction "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Walker v.*

---

[1] Isenburg was also charged with dealing in methamphetamine and maintaining a common nuisance. He pleaded guilty to maintaining a common nuisance. Tr., Vol. I at 139-40. Lanum was also charged with dealing in methamphetamine and possession of a controlled substance. She pleaded guilty to possession of methamphetamine with intent to deliver and was serving her sentence at the time of Eldridge's trial. *Id.* at 174.

*State*, 998 N.E.2d 724, 726 (Ind. 2013) (citation omitted). "It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling." *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005) (citations omitted).

## II. Dealing in Methamphetamine

To prove the offense of dealing in methamphetamine, a Level 5 felony, the State was required to show beyond a reasonable doubt that Eldridge knowingly or intentionally possessed methamphetamine with intent to deliver. Ind. Code § 35-48-4-1.1(a)(2). Here, the State sought to convict Eldridge as an accomplice. To do so, the State needed to prove that Eldridge knowingly or intentionally aided Lanum in dealing methamphetamine. *See* Ind. Code § 35-41-2-4.

A person who aids another in committing a crime can be charged as a principal for all acts committed in accomplishing the crime. *Smith v. State*, 809 N.E.2d 938, 944 (Ind. Ct. App. 2004), *trans. denied*. The particular facts and circumstances of each case must be considered to determine whether a person participated in an offense as an accomplice. *Castillo v. State*, 974 N.E.2d 458, 466 (Ind. 2012). We consider four factors to determine whether a defendant acted as an accomplice: 1) presence at the scene of the crime, 2) companionship with another at the scene of the crime, 3) failure to oppose the commission of the crime, and 4) course of conduct before, during, and after the

occurrence of the crime. *Id.* The fact that a defendant is present during a crime and did not oppose the crime is not sufficient standing alone to establish accomplice liability, but in conjunction with the other facts and circumstances, may be enough. *Tuggle v. State*, 9 N.E.3d 726, 736 (Ind. Ct. App. 2014), *trans. denied*.

[11] Here, all four factors weigh in favor of Eldridge's conviction of dealing in methamphetamine. Eldridge picked Lanum up at her request and was present with her when she offered to sell methamphetamine to Lybrook. He obviously knew Lanum prior to this incident, as she was able to reach him by text message, and he responded favorably to her request to meet up. Although all parties testified the police arrived almost immediately after Lybrook came outside to meet the truck, *see* tr., vol. I at 153 (Lybrook testifying the police showed up within "maybe thirty seconds" after she got to the truck), there is no indication Eldridge tried to stop Lanum from offering drugs for sale. And finally, Eldridge's conduct indicated both a familiarity with Lanum and a willingness to take her somewhere to get rid of her "stuff." Tr., Vol. I at 166. In addition, he had with him a padlocked backpack in which he carried scales, small plastic baggies like the kind used to hold drugs, and multiple syringes. *See Schaaf v. State*, 54 N.E.3d 1041, 1043-44 (Ind. Ct. App. 2016) (holding evidence was sufficient to support defendant's conviction of dealing as an accomplice where defendant was present at the scene of the crime, was a companion of the principal, failed to oppose the crime, suggested the place for the buy to occur, and allowed the buy to take place in his vehicle). There was sufficient evidence

that Eldridge aided Lanum in dealing methamphetamine and therefore, sufficient evidence to find him guilty of dealing in methamphetamine.

## II. Maintaining a Common Nuisance

[12] To prove Eldridge was guilty of maintaining a common nuisance, a Level 6 felony, the State was required to show that he knowingly or intentionally maintained a vehicle that is used to unlawfully use, manufacture, keep, offer for sale, sell, deliver, and/or finance the delivery of controlled substances. Ind. Code § 35-45-1-5(a) and (c). Eldridge claims the State did not prove he knowingly or intentionally maintained a common nuisance. We base our decision not on his *mens rea*, however, but on the fact that only one incident of using the truck for a prohibited purpose was shown.

[13] From at least 1976, the law regarding maintaining a common nuisance was that the words "common nuisance" "carry with them a notion of continuous or recurrent violation" such that "proof of an isolated occurrence would not sustain a conviction." *Wells v. State*, 170 Ind. App. 29, 33, 351 N.E.2d 43, 46 (1976). In 1998, the common nuisance statute was amended to add language that maintaining a common nuisance is committed by "[a] person who knowingly or intentionally maintains a building, structure, vehicle, or other place *that is used one (1) or more times*" to commit the prohibited activity. Ind. Code § 35-48-4-13(b) (2008). After this amendment, the crime of maintaining a common nuisance no longer required a showing of more than an isolated incident of unlawful activity. The "one or more times" language remained in

the statute for several years, until the statute was again amended in 2016 to remove that language. The 2016 version of the maintaining a common nuisance statute, effective July 1, 2016, and therefore the version applicable to Eldridge's offense, again defines a "common nuisance" as a "building, structure, vehicle, or other place that is used for (1) or more of the [prohibited] purposes . . . ." Ind. Code § 35-45-1-5(a) (2016). "[I]t is clear that the legislature intended by the removal of the 'one or more times' language to restore the prior common law and statutory requirement that a common nuisance is one in which continuous or recurrent prohibited activity takes place." *Leatherman v. State*, 101 N.E.3d 879, 884 (Ind. Ct. App. 2018). Because the State failed to prove that the vehicle over which Eldridge exerted control had been used on more than this one occasion to sell or deliver controlled substances, the State failed to prove by sufficient evidence that Eldridge committed maintaining a common nuisance. We must reverse that conviction.

## III. Possession of a Controlled Substance

[14]     To prove Eldridge committed the offense of possession of a controlled substance, the State had to demonstrate that he knowingly or intentionally possessed hydrocodone and/or oxycodone, both of which are schedule II controlled substances. Ind. Code § 35-48-4-7(a). Possession can be actual or constructive, *Cannon v. State*, 99 N.E.3d 274, 291 (Ind. Ct. App. 2018), *trans. denied*, and in this case, the State relied on Eldridge's constructive possession of the hydrocodone and oxycodone. To prove constructive possession of controlled substances, the State must show that the defendant has both the

*intent* and the *capability* to maintain dominion and control over the drugs. *Houston v. State*, 997 N.E.2d 407, 410 (Ind. Ct. App. 2013). Where, as here, the defendant's possession of the premises is not exclusive, the inference of *intent* to maintain dominion and control must be supported by additional circumstances pointing to the defendant's knowledge of the nature and presence of the controlled substances. *Id.* Those additional circumstances can include:

> (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

*Id.*[2] The *capability* prong can be satisfied by proof that the defendant is able to reduce the contraband to the defendant's personal possession. *Negash v. State*, 113 N.E.3d 1281, 1291 (Ind. Ct. App. 2018).

[15] Eldridge had the capability to maintain dominion and control over the drugs because they were found on the truck's bench seat next to where he had been sitting and were easily within his reach. Therefore, he had the ability to take the drugs into his personal possession. As for the intent to maintain dominion and control over the drugs, Deputy Farlow saw Eldridge take something from

---

[2] These circumstances are nonexhaustive; ultimately, the question is whether a reasonable fact-finder could conclude that the defendant knew of the nature and presence of the contraband. *Johnson v. State*, 59 N.E.3d 1071, 1074 (Ind. Ct. App. 2016).

his lap and act as though he were trying to hide it. The drugs were found in close proximity to where Eldridge had been sitting, in a truck which Eldridge had borrowed to use for work. Eldridge had allowed Lanum into the vehicle knowing she had "stuff" she wanted to get rid of. Tr., Vol. I at 166. And finally, Eldridge had other items in the vehicle that suggested knowledge of drug activity, including syringes, scales, and plastic bags of the type used to hold drugs. Based on this, we conclude there was substantial evidence of probative value from which the jury could have determined Eldridge had constructive possession of the drugs found in the vehicle. *See*, *e.g.*, *Holmes v. State*, 785 N.E.2d 658, 662 (Ind. Ct. App. 2003) (holding that the State presented sufficient evidence to convict the defendant based in part on defendant's close proximity to drugs found under the driver's seat of a vehicle plus flight, an additional circumstance indicating knowledge).

# Conclusion

[16] We conclude the State presented sufficient evidence to prove Eldridge was guilty of dealing in methamphetamine and possession of a controlled substance. However, because the State showed only one instance of use of the truck for a prohibited purpose, the State failed to prove that Eldridge maintained a common nuisance. Accordingly, Eldridge's conviction for maintaining a common nuisance is reversed and we remand to the trial court to amend the abstract of judgment accordingly. Eldridge's remaining convictions are affirmed.

Affirmed in part, reversed and remanded in part.

Riley, J., and Kirsch, J., concur.