## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 15 2020, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven R. Knecht
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah J. Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Curtis Jarvis Carter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 15, 2020

Court of Appeals Case No.
19A-CR-2489

Appeal from the Cass Superior
Court

The Honorable Thomas C.
Perrone, Judge

Trial Court Cause No.
09D02-1803-F2-6

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Curtis Carter (Carter), appeals his conviction for dealing in a narcotic drug (heroin), a Level 2 felony, Ind. Code §§ 35-48-4-1(a)(2), -(e)(1); and dealing in cocaine, a Level 3 felony, I.C. §§ 35-48-4-1(a)(2), -(d)(1).

We affirm.

# ISSUE

Carter presents the court with one issue, which we restate as: Whether the State proved beyond a reasonable doubt that he possessed heroin and cocaine sufficient to support his dealing convictions.

# FACTS AND PROCEDURAL HISTORY

Carter and Darrell Wright (Wright) have the same mother. Although they had fallen out of contact, the two became reacquainted in 2017. Prior to March 5, 2018, Carter and Wright had both been dealing drugs. Carter, who went by the name Capo, mainly dealt in Monticello, Indiana, while Wright mainly dealt in Lafayette, Indiana.

On March 2, 2018, Carter texted username "TravD Friend" that "I'm almost there[.]" (Exh. Vol. p. 45). About an hour later, TravD Friend texted Carter a picture of a brownish substance on a scale that read ".84" and told Carter, "fuck bro, .84 man[,]" "we cool tgo, just hook it up in the next one[,]" and "u need a new scale haha[.]" (Exh. Vol. pp. 45, 47). Later that day, Carter and Wright drove a rental car to Chicago for the weekend. While Carter was in Chicago

that Saturday, he received a text message from TravD Friend asking, "u for sure gonna have the full g and gonna be in monti tomorrow rite?" to which Carter responded, "Yea bro[.]" (Exh. Vol. p. 46). On Sunday when Carter and Wright were still in Chicago, TravD Friend texted Carter, "bro!!! I need a .5 pronto" followed approximately two hours later by a text from TravD Friend to Carter, simply stating, "broooooooo!" (Exh. Vol. p. 46). Carter also received texts from username "halie" stating, "Capo wya man[,]" and "Lemme know sum g. u said yu would be back yesterday. Im sick, my ppl sick." (Exh. Vol. p. 50).

[6] On Monday, March 5, 2020, Wright and Carter left Chicago for Logansport, Indiana, with Wright driving. The Cass County Drug Task Force (DTF) had become aware that the phone number used by Carter to receive and send the aforementioned text messages was associated with drug dealing. The DTF had procured a ping warrant to track GPS data associated with the phone number. The DTF had been monitoring the phone's whereabouts in Chicago over the weekend and knew that the phone was heading south on U.S. 35, where a DTF official visually tied the ping signal to Carter and Wright's car. After the DTF official observed the car driven by Wright committing two traffic violations, Deputy Ryan Preston (Deputy Preston) of the Cass County Sheriff's Department initiated a traffic stop on U.S. 35 near 475 North, assisted by Officer Andrew Strong (Officer Strong) of the DTF, who arrived a short time later.

[7] Deputy Preston approached the driver's side window while Officer Strong approached the passenger side. Wright unrolled his window two inches to speak to the deputy. When Deputy Preston received no response to his request that Wright unroll his window further to ease communication, Deputy Preston told Wright that he would have his canine partner conduct a free-air sniff of the car. Wright placed the car in gear and sped away, leading Deputy Preston, Officer Strong, and other assisting officers on a high-speed chase through rural Cass County. On 200 North just east of U.S. 35, Wright drove through a "Road Closed, High Water" barricade with Deputy Preston directly behind him. Deputy Preston observed Wright stick his left hand out of the driver's side window and drop a baseball-sized object. Wright and Carter's car stalled in the high water, bringing the chase to an end. Deputy Preston searched the area where he had seen Wright drop the object and discovered a plastic bag containing what was later determined to be 72.48 grams of a heroin/fentanyl mix and 5.19 grams of cocaine. A search of the car after Wright and Carter were taken into custody revealed two cell phones on the passenger seat owned by Carter, one of which was the cell phone that was the subject of the ping warrant, one cell phone on the driver's side, and one cell phone in the car's center console. A fifth cell phone was found in the back hatch of the car in a backpack which also contained digital scales, small plastic baggies, a razor blade, and latex gloves.

[8] Wright and Carter were placed under arrest and booked on charges of dealing and possessing heroin and cocaine. While he was being booked, Carter called

his girlfriend and told her at one point during their conversation, "I made my own bed. I gotta lay in it." (Exh. 31 at 3:00). Throughout the day of March 5, 2018, Carter continued to receive texts on his cell phone. Username "halie" texted him, "U back g?", "Capo, wtf let me know something Im sick as fuck" and "Dude please hmu[.]" (Exh. Vol. 50). Username "Dustin" asked Carter, "When u gonna be down u needing a ride here?" and, receiving no response from Carter, texted him, "Julie is feelin sick n been drivin me crazy askin when u was supposed to be here a million times or if I talked to you yet[.]" (Exh. Vol. p. 51).

[9] On March 5, 2018, the State filed an Information, charging Carter with Level 2 felony dealing in a narcotic drug (heroin), Level 3 felony possession of a narcotic drug (heroin), Level 3 felony dealing in cocaine, Level 5 felony possession of cocaine, Level 6 felony resisting law enforcement, and Class B misdemeanor visiting a common nuisance. On September 4, 2019, the trial court convened Carter's two-day jury trial. Prior to the commencement of trial, the trial court granted the State's motion to dismiss the visiting a common nuisance charge. The jury heard testimony that Chicago is a "source city" for heroin, that baggies, gloves, razor blades, and digital scales are all used by drug dealers to package narcotics for sale, and that possession of 72.48 grams of heroin was more indicative of a dealer than a user. (Tr. p. 178). Carter's text messages were admitted at trial, including those referring to Carter's clients being sick. A DTF officer explained to the jury that opioid users such as heroin addicts feel sick when they experience withdrawal. Carter testified on his own

behalf that, prior to March 5, 2018, he had been dealing drugs in Monticello and that most of the text messages admitted at trial were about heroin, but he denied any knowledge of the heroin and cocaine found in the car on March 5, 2018. The prosecutor argued during closing statements that Carter and Wright had jointly possessed the heroin and cocaine. The jury found Carter guilty on all charges except for resisting law enforcement.

On October 1, 2019, the trial court held Carter's sentencing hearing. The trial court found Carter's criminal history to be an aggravating circumstance, and it found no mitigating circumstances. Due to double jeopardy concerns, the trial court did not sentence Carter for his possession of heroin and possession of cocaine convictions. The trial court sentenced Carter to twenty years for dealing in a narcotic drug (heroin) and to ten years for dealing in cocaine, to be served consecutively, for an aggregate sentence of thirty years.

# DISCUSSION AND DECISION

## I. *Standard of Review*

Carter challenges the evidence supporting his conviction. It is well-established that when we review the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

## II. *Constructive Possession*

[12] The State charged Carter in the dealing Counts with "knowingly or intentionally possess[ing] with the intent to deliver [h]eroin . . . having a weight of at least 10 grams" and "knowingly or intentionally possess[ing] with intent to deliver cocaine . . . having a weight of at least 5 grams, but less than 10 grams[.]" (Appellant's App. Vol. II, p. 15). Thus, in order to prove the dealing offenses, the State was required to show that Carter possessed the heroin and cocaine found in the car on March 5, 2018. Carter argues that the evidence showed that only Wright possessed them.

[13] If a person does not have direct physical control over an item, he may, nevertheless, constructively possesses it if he has the capability and intent to maintain dominion and control over it. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). When a defendant has exclusive possession of the premises where the item was found, an inference arises that he knew of the presence of the item and was capable of controlling it. *Id.* However, if possession of the premises is not exclusive, as is the case here, a trier of fact may still infer that a defendant had the requisite intent if additional circumstances indicate a defendant's knowledge of the presence and nature of the item. *Id.* Examples of these additional circumstances include incriminating statements by the defendant, attempted flight or furtive gestures, a drug manufacturing setting, proximity of the defendant to the item, whether the item is in plain view, and other items belonging to the defendant in close proximity to the item. *Id.* These are merely examples of additional circumstances which may show constructive possession.

*Cannon v. State*, 99 N.E.3d 274, 279-80 (Ind. Ct. App. 2018), *trans. denied*. Other circumstances may just as reasonably demonstrate the requisite knowledge. *Id*. at 280.

[14] Carter acknowledges that the evidence showed that he was capable of exercising control over the heroin and cocaine at issue. However, he argues his possessory interest in the car was not exclusive due to Wright's presence and that the State failed to show additional circumstances pointing to his knowledge of the presence and nature of the heroin and cocaine. While we agree with Carter's argument that his mere presence in the car as a passenger was not adequate to demonstrate the requisite knowledge, we disagree with him that the State failed to show adequate additional circumstances indicating that knowledge. Carter's text messages and his own admissions at trial showed that Carter and Wright were both dealing drugs, Carter was actively dealing heroin in the days leading up to the March 5, 2018, traffic stop, and Carter had clients who expected him to deliver heroin on Sunday, March 4, 2018. During that weekend, Carter and Wright visited Chicago, a "source city" for heroin, even as Carter's clients continued to inquire when he was to return. (Tr. p. 178). After the traffic stop was initiated, Wright was observed tossing a dealer's amount of heroin and over 5 grams of cocaine out of the window of the car, and the subsequent search of the car yielded a backpack containing the tools of the drug dealer's trade, namely scales, a razor blade, gloves, and baggies. On the same day that he was arrested and booked on heroin and cocaine dealing charges, Carter's clients continued to inquire about heroin, and Carter told his girlfriend

in a phone call that "I made my own bed. I gotta lay in it." (Exh. 31 at 3:00). The jury could have reasonably inferred from these additional circumstances that Carter travelled to Chicago to procure heroin to satisfy his impatient customers and that he, therefore, knew that the heroin and the cocaine packaged with it were in the car.

[15] Carter attempts to argue otherwise by directing our attention to myriad circumstances which he contends undercut the State's showing, such as his testimony at trial that he did not know about the heroin and cocaine until the officer retrieved it from where it was thrown and that he had been smoking marijuana right before the traffic stop, which he would never had done if he had known there were other drugs in the car. Carter invites us to speculate that the bag containing the heroin and cocaine was small enough to be secreted under Wright's clothing, making his contention that he had not known about the drugs more probable. These arguments are unavailing, as crediting them would entail consideration of the evidence that does not support the jury's verdict and/or a reweighing of the evidence on our part. Doing so would be contrary to our standard of review. *See Drane*, 867 N.E.2d at 146.

[16] Carter also argues that the absence of any incriminating statements or flight on his part, the fact that the heroin and cocaine were not found in a manufacturing setting, and the absence of any of his belongings found near the heroin and cocaine all meant that the State failed to make its case. However, Carter's argument overlooks his comment to his girlfriend that "I made my own bed. I gotta lay in it[,]" which the jury could have reasonably inferred to be an

inculpatory statement. (Exh. 31 at 3:00). In addition, the factors listed in constructive possession jurisprudence are not necessary or exclusive. *See Cannon*, 99 N.E.3d at 280 ("[T]he listed circumstances are not exhaustive."). In other words, the absence of one or more of the circumstances which may prove constructive possession does not render the State's showing inadequate. Because the evidence supported a reasonable inference that Carter knew about the heroin and cocaine in the car, we affirm the jury's verdict.

# CONCLUSION

[17] Based on the foregoing, we conclude that the State proved beyond a reasonable doubt that Carter possessed heroin and cocaine sufficient to support his dealing convictions.

[18] Affirmed.

Mathias, J. and Tavitas, J. concur